[No. 37287. Department One. February 25, 1965.]

ELAINE EPPERLY, *Individually and as Administratrix, Appellant*, v. CITY OF SEATTLE, *Respondent and Cross-appellant*, MERRITT-CHAPMAN & SCOTT CORPORATION, *Respondent.**

*Reported in 399 P. (2d) 591.

*Kelley & O'Sullivan (Thomas D. Kelley* and *William A. Noble,* of counsel), for appellant.

*A. L. Newbould, John A. Logan, Robert Ward Freedman, Karr, Tuttle, Campbell, Koch & Granberg,* by *John F. Kruger* and *Michael M. Corless, Williams, Lanza, Kastner & Gibbs,* by *Joseph J. Lanza,* for respondents and cross-appellant.

SOULE, J.†—This is an appeal from a summary judgment granted in favor of defendants.

Guy W. Epperly died on April 4, 1960, from injuries received when struck by a falling cable while working on the High Gorge Dam on the Skagit River. Individually and as administratrix of his estate, his widow, Elaine Epperly, brought this action against only the city of Seattle, hereinafter designated as the city. The city brought a third-party action against Merritt-Chapman & Scott Corporation by virtue of a provision in the contract between the defendants which reads in part as follows:

"The contractor shall be responsible for the safety, adequacy, efficiency, and sufficiency of his plant and equipment, and for his method of prosecuting the work; and for the safety of his employees.

---

† Judge Soule is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

"The contractor shall be responsible for all damages to persons or property that occur as a result of his operations, fault, or negligence in connection with the prosecution of the work, and shall be responsible for all work performed until completion and final acceptance."

In addition to alleging its right to indemnity under the foregoing language of the contract, the city also alleged separately and in the alternative that Merritt-Chapman & Scott Corporation, hereinafter called the contractor, was the active tort-feasor.

There is no question but that Guy Epperly was an employee of the contractor.

The matter came before the trial court on the motion by the city to dismiss for want of prosecution under Rule of Pleading, Practice and Procedure 41.04W, RCW Vol. 0, and also on the motion of the contractor to dismiss plaintiff's complaint for failure to state a claim for relief under Rule of Pleading, Practice and Procedure 12, RCW Vol. 0.

After permitting the filing of appropriate evidentiary affidavits, this latter motion was treated as a motion for summary judgment, under Rule of Pleading, Practice and Procedure 56, RCW Vol. 0, and an order was entered dismissing plaintiff's action.[1]

The undisputed facts are that, for the purpose of building the High Gorge Dam, the city entered into a written public works construction contract with the contractor, which contract contained many detailed specifications and reserved broad inspection rights to the city.

---

[1] The trial court's decision was based on the ground that the city was a statutory employer as defined by the Industrial Insurance Act because it was primarily liable for the payment of the premium under RCW 51.12.050. We neither adopt nor reject the reasoning of the trial court, but prefer to rest our decision on another ground.

We are impressed, as was the trial court, with the incongruous result necessarily flowing from the plaintiff's theory under which the owner of the premises who either directly or indirectly pays the insurance premium based on the hazards of his undertaking gets no protection from the employees of the contractor who may be injured in the course of the work for which the premiums are paid. The construction of the statute to permit such a result presents grave constitutional questions which have not been adequately argued.

In order to facilitate the project, the contractor strung a cable across the gorge to carry a power line. To secure one end of the cable, the contractor designed, fabricated and installed a large pad eye, to which the cable was fastened. It was the failure of this device, after about 3 years' service, which permitted the cable to fall.

The pad eye, together with the cable, were wholly the instrumentalities of and under the control of the contractor, although they were, of course, placed upon city property. They were not part of the dam, as it was to be completed, and the transfer point for the electricity from the city to the contractor's line was a substantial distance from the construction site.

Although the complaint alleges active negligence on the part of the city, the plaintiff, in resisting the motion for summary judgment, conceded that the city had been entirely passive. In the affidavit filed by plaintiff's counsel in opposition to the motion, he said:

"It is plaintiff's entire case that the City of Seattle had a duty to inspect this appliance and see that it was adequate and safely installed, and it could not avoid this duty by entering into a contract with Merritt-Chapman & Scott."

Likewise, in the brief originally filed by the plaintiff, it is argued:

". . . that the erection of such cable with its attached pad-eye as fastened to the cliff overhead was such a dangerous appliance and instrumentality that the City of Seattle had a duty to provide for its safe construction and design, and could not delegate such responsibility to an independent contractor. . . ."

The plaintiff thus attempts to double-string her bow. She alleges failure of the duty to furnish a safe place to work, and likewise, seeks to impose liability on the theory that the danger inhering in the device built and installed by the contractor gave rise to a nondelegable duty owed by the city, as owner, to the decedent, as a workman of the contractor.

The same attempt was made in *Corban v. Skelly Oil Co.*, 256 F. (2d) 775, which is cited in plaintiff's brief. In that case, the court said, p. 780:

"On behalf of Corban it is urged that the work being done at the time of his injury was inherently dangerous regardless of the equipment used, and that, in such cases, the principal owes a non-delegable duty to see that the work is performed with the appropriate degree of care. It has been stated that 'An employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous. The theory upon which the liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, non-delegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or, in other words, that all reasonable precautions shall be taken during its performance, to the end that third persons may be effectually protected against injury'. 27 Am. Jur. 517, Independent Contractors, § 39. Thus it appears that the rule is designed to protect *third persons*. As we have shown Corban was not in this class. *We have seen no case where the inherently dangerous doctrine has been extended so as to permit an employee of an independent contractor to recover from the principal for a breach of the non-delegable duty.* . . ." (Italics ours.)

Our perusal of the numerous authorities cited in plaintiff's briefs has led us to the same conclusion.

■ The doctrine of strict liability, of which the dangerous instrumentality, inherently dangerous activity, or ultrahazardous activity concepts are but facets, is discussed in Prosser on Torts (3d ed.) § 74, p. 508:

". . . It is conduct which does not so far depart from social standards as to fall within the traditional boundaries of negligence—usually because the advantages which it offers to the defendant and to the community outweigh even the abnormal risk; but which is still so far socially unreasonable that the defendant is not allowed to carry it on without making good any actual harm which it does *to his neighbors*." (Italics ours.)

The plaintiff refers to Restatement, Torts § 423, p. 1142:

"MAKING OR REPAIR OF APPLIANCES USED IN ULTRAHAZARDOUS ACTIVITIES.

"One who as a business carries on an activity which threatens a grave risk of serious bodily harm or death unless the appliances used are carefully constructed and maintained and who employs an independent contractor to construct or maintain such appliances, is subject to the same liability for bodily harm caused by the negligence of the contractor in constructing or maintaining such appliances as though the employer had himself done the work of construction or maintenance."

The example given in the comment is that of the duty of an electric power company to maintain its wires and appliances safely. As to third persons, it cannot escape liabilities by employing an independent contractor to maintain them but plaintiff would apply the principle to the workman of that independent contractor who is injured because he is furnished a defective appliance by his own employer.

The duty of one who carries on an ultrahazardous activity is defined in Restatement, Torts § 519, p. 41:

"Except as stated in §§ 521-4, one who carries on an ultrahazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultrahazardous, although the utmost care is exercised to prevent the harm."

The exception is set forth in § 523, p. 49:

"The rule stated in § 519 does not apply where the person harmed by the unpreventable miscarriage of an ultrahazardous activity has reason to know of the risk which makes the activity ultrahazardous and
"(a)   takes part in it,  .  .  ."

In commenting on the foregoing section, the editors have noted that it is not necessary that the person who knows of the activity and its risks should know all of the causes of the risks inseparable from the activity. It is enough that he has reason to know that there is an unavoidable risk

to which those taking part in the activity or coming within its reach will subject themselves. Thus the rule is plainly for the benefit of persons not engaged in promoting the activity and is not intended to define the duty of the owner to those employed by an independent contractor to carry on the work.

A corollary of the rule stated in Restatement, Torts § 523 is that if the injury is due to a preventable miscarriage, then liability rests upon the one who had the duty to prevent it. In this case, the duty related to a safe place to work.

Where the inherently dangerous activity doctrine is applicable, the law invokes the theory of respondeat superior, imposing the master-servant relationship upon the parties engaged in the activity, even though the owner has attempted to escape liability by employing an independent contractor. Our own court has recognized the distinction between the level of duty to members of the public and the duty of the owner to one engaged to work upon the project as the employee of an independent contractor in the case of *Engler v. Seattle*, 40 Wash. 72, 82 Pac. 136. The plaintiff Engler was an employee of Ryan and Company, which had a contract to do work for the city of Seattle. He was injured on the job, and, relying upon the authority of two previous Washington cases[2] which had permitted recovery to third persons by reason of similar activity conducted by the city of Seattle, he brought an action.

In denying recovery, the court noted the following distinction between the duty of the city to the workman and to third persons generally, p. 75:

"Appellant was himself engaged in the work under a contract with Ryan & Company, and while as to third persons who might be injured, or whose property might be damaged, by reason of that work, he became the servant of the city by operation of law, yet, as between the city and himself, he was solely the servant of Ryan & Company, and not of the city. The liability of the city of Seattle to a third party . . . existed irrespective of the question of

[2] *Seattle v. Buzby*, 2 Wash. Terr. 25, 3 Pac. 180; *Cooper v. Seattle*, 16 Wash. 462, 47 Pac. 887.

whether or not the work was being done by an independent contractor. . . ."

In her brief, plaintiff discusses numerous cases relating to problems of strict liability. None of them concerns the duty of a passive owner to the employee of the contractor who creates the danger and thus all are distinguishable. In concluding argument, the plaintiff's brief states:

"There are many other cases wherein the courts have found the owner liable for injury to the employees of a contractor or sub-contractor by reason of the theory of non-delegable duty. See *Person vs. Caldwell Wingate Co.*, 176 F 2d. 237; *Evans vs. Elliott*, 220 MC [sic] 253, 17 S. E. 2d. 125; *Curtis vs. Kiley*, 26 N. E. 421; *Richmond Bros. vs. Miller*, 131 Ohio 424, 3 N. E. 2d. 60."

The citations do not support the proposition in the context of the present case. The *Person* case involved the workman of another contractor, not the one who created the hazard. The other three cases all involved injuries to third parties who were not connected in any way with the activity.

We hold that the plaintiff's right to recovery cannot be based upon any concept rooted in the doctrine of strict liability because the deceased was an employee of the contractor who created the hazard and was engaged upon the project out of which the hazard arose. Thus, he was not within the class of persons protected.

Plaintiff's proper approach is based upon the common law duty of an owner to provide a safe place to work. To determine the extent of that duty, we must first consider whether the contract between the city and the contractor imposed upon the city any duties toward the deceased which the law does not normally place upon an owner.

The contract is complex but it is complete, and plaintiff's reply brief specifies a number of provisions which are asserted to give rise to the positive duties. No evidentiary affidavits have been offered in opposition to the motion for summary judgment which would affect the construction of the contract. Under such circumstances, the construction of the contract presents a question of law

for the court and not a question of fact for the jury. *Bellingham Sec. Syndicate, Inc. v. Bellingham Coal Mines, Inc.*, 13 Wn. (2d) 370, 125 P. (2d) 668; *Watson v. Hecla Mining Co.*, 79 Wash. 383, 140 Pac. 317.

We have examined the contract provisions and, in each case, it seems to us that the right of inspection or the right of supervision which is set forth is for the benefit of the city to insure that it receives the product which it desires and within the time limit specified for the completion of the work. Nothing in the contract reserves to the city the right to exercise day to day control over the manner in which the details of the work are performed.

We see nothing in any provision of the contract which imposes a duty upon the city with respect to the workmen who are engaged by the independent contractor and particularly we see nothing by which the city undertakes to furnish any portion of the facility which failed.

 The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship. *Fardig v. Reynolds*, 55 Wn. (2d) 540, 348 P. (2d) 661; *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294; *Engler v. Seattle, supra.*

We hold, therefore, that the contract created no peculiar duties to furnish a safe place to work, apart from that imposed upon the owner by the common law.

The plaintiff must recover, if she recovers at all, by reason of the city's breach of its common law duty to furnish a safe place to work.

 The general rule is that the owner of premises owes to the servant of the independent contractor employed to perform work on his premises the duty to avoid endangering him by his own negligence or affirmative act, but owes no duty to protect him from the negligence of his own master. *Murk v. Aronsen*, 57 Wn. (2d) 785, 359 P. (2d) 816; *Campbell v. Jones*, 60 Wash. 265, 110 Pac. 1083, 20 A.L.R. 671. See *Seattle Aerie No. 1 of the Fraternal Order of Eagles v. Commissioner of Unemployment Compensation & Placement*, 23 Wn. (2d) 167, 160 P. (2d) 614.

The common law duty of the owner to furnish a safe place to work is succinctly stated in 2 Shearman & Redfield on Negligence (1941 ed.) § 279, p. 689:

"But the common-law duty to furnish a safe place to work, even as extended by statute to include the tools and appliances without which the place to work would be incomplete for the purpose intended, refers to the owner's plant and not to the contractor's equipment. . . .

". . . The law requiring an owner to keep the place reasonably safe for a contractor and his subcontractors does not apply where the work itself is of an unsafe nature or the defects are due to the imperfect and negligent work of the contractor himself."

This limitation upon the duty is recognized by *Gibilterra v. Rosemawr Homes, Inc.*, 19 N. J. 166, 115 A. (2d) 553; *Allen v. Texas Elec. Ser. Co.*, 350 S. W. (2d) 866 (Texas Civ. App. 1961); *Weber v. City of Hurley*, 13 Wis. (2d) 560, 109 N. W. (2d) 65.

Although the owner is under a duty to furnish reasonable protection against hidden dangers known, or which ought to be known to him and not to the contractor or his servants, this duty extends only to latent dangers which the contractor or his servants could not reasonably have discovered and of which the owner knew or should have known. *Deaton v. Board of Trustees of Elon College*, 226 N. C. 433, 38 S. E. (2d) 561; *Wellman v. East Ohio Gas Co.*, 160 Ohio St. 103, 113 N. E. (2d) 629.

It is argued that a duty arises because the decedent was an invitee. There can be no question but that this was his status. *Meyers v. Syndicate Heat & Power Co.*, 47 Wash. 48, 91 Pac. 549. However, his status as an invitee does not impose upon the city any duty to protect him from the negligent acts of his employer and the plaintiff cites no authority which supports the imposition of such a duty.

Plaintiff relies heavily upon two cases which are quite distinguishable. In *Meyers v. Syndicate Heat & Power Co., supra*, there was, in fact, a hidden danger on the premises known to the defendant owner, but not to the workman of the contractor who came in to do some pipe fitting work and fell into an improperly guarded tank of hot water. In

*Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn. (2d) 647, 364 P. (2d) 796, the defendant had affirmatively assumed the duty of furnishing the lighting and this duty, of course, could not be delegated. It was for failure to perform this duty that liability was imposed.

In the case at bar, the city did not supervise the activities of the workmen, did not furnish the appliance which failed and it did nothing affirmatively to increase the risk. The premises were safe when turned over to the contractor and knowledge concerning the hazard which arose thereafter was as available to the contractor as to the city. The city had no superior knowledge or superior means of acquiring it.

Under these circumstances, we hold that the city's duty was discharged. It had no duty arising either from the contract or from common law to inspect the contractor's facilities to protect the contractor's workmen from hazards incident to their use, and, therefore, the plaintiff must obtain her relief within the framework of the Industrial Insurance Law.

Our holding makes it unnecessary to consider whether the city's motion to dismiss for want of prosecution was properly denied.

The order granting summary judgment in favor of the defendants is affirmed.

ROSELLINI, C. J., HILL, HUNTER, and HALE, JJ., concur.