[No. 24646–1–I.   Division One.   August 6, 1990.]

BARRY L. HUSFLOEN, ET AL, *Appellants,* v. MTA
CONSTRUCTION, INC., ET AL, *Respondents.*

*Patrick H. LePley* and *Tobin & LePley,* for appellants.

*Preston L. Niemi, H. Roland Hofstedt,* and *Merrick, Hofstedt & Lindsey,* for respondents.

WEBSTER, J.—Barry Husfloen appeals a summary judgment dismissal of his suit against MTA Construction, Inc., and Bill's Plumbing. Husfloen was injured on the job and argues that the defendants breached a duty to comply with safety regulations. We reverse.

## FACTS

Husfloen was seriously injured while operating a concrete pumping truck for Pumpcrete, an independent contracting firm which provided concrete pumping services. The truck carried a concrete pump with an extendable 90–foot boom. The boom housed a 4–inch pipe through which concrete flowed and operated like a crane: it unfolded and stretched out to pour concrete into forms on a jobsite. Husfloen maneuvered the boom and regulated the pump using a remote control device connected to the pump truck by a long electric cable. The cable allowed him to stand wherever necessary to obtain a good vantage point of the concrete being poured.

On February 18, 1987, Pumpcrete dispatched Husfloen to a residential construction site. Bill's Plumbing, a general contractor and the owner of the site, had subcontracted with MTA Construction to build a foundation; MTA had hired Pumpcrete to pump concrete into forms. Husfloen arrived in the morning and parked the pump truck in the only available place for the truck at the jobsite, a driveway. Husfloen noted overhead wires directly above his truck but was sure he could operate the machine without contacting them. After successfully pouring the concrete, Husfloen proceeded to clean the pump to remove concrete from the boom, a task which had to be done at the jobsite every time the machine was used. In order to effectively clean the concrete out of the pump tubing, he needed to run water back and forth through the boom with it vertically extended. As he extended the boom, it contacted an overhead wire—a 7,200–volt power line—and energized the pump truck. This sent current through the electric cable to the remote control box and into Husfloen's body. He became instantly

incapacitated and fell to the ground, still clutching the remote control box. An employee of MTA working on the project site saw Husfloen on the ground shaking violently and knocked the box out of his seized hands with a board. Husfloen suffered severe burns and was rushed to a hospital. His employer, Pumpcrete, was cited by the Department of Labor and Industries for violating a regulation that prohibits operating equipment within 10 feet of an energized power line.

Husfloen brought this suit on July 14, 1988, against MTA and Bill's Plumbing alleging that they negligently allowed or instructed him to operate the boom within 10 feet of the power line, failed to have the public utility disconnect the power, and failed to assist in folding up the pump truck. Both defendants filed motions for summary judgment which the court granted.

## DISCUSSION

■ CR 56 authorizes entry of summary judgment only when a party is entitled to judgment as a matter of law and no material questions of fact exist which would necessitate a trial of the matter; all facts submitted and inferences must be considered in a light most favorable to the non-moving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Ward v. Richards & Rossano, Inc., P.S.*, 51 Wn. App. 423, 754 P.2d 120, *review denied*, 111 Wn.2d 1019 (1988).

■ RCW 49.17.060(2) provides that employers "[s]hall comply with the rules, regulations, and orders promulgated under this chapter." Husfloen then cites WAC 296–155–040(2) arguing that this regulation imposed a duty on MTA and Bill's Plumbing to ensure compliance with safety regulations:

> Every employer shall require safety devices, furnish safeguards, and shall adopt and use practices, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every thing reasonably necessary to protect the life and safety of employees.

The Washington Supreme Court recently interpreted this statute and regulation to impose a duty upon a general contractor at a construction site to comply with safety regulations for the protection of employees of independent contractors. *Stute v. P.B.M.C., Inc.,* 114 Wn.2d 454, 788 P.2d 545 (1990). In *Stute,* an employee of a subcontractor installing a roof slipped and fell three stories. The general contractor that hired the subcontractor had provided no scaffolding or other safety equipment to break the fall. 114 Wn.2d at 456. The employee sued the general contractor contending that it owed him a duty to provide safety equipment at the jobsite, and specifically, that it failed to provide scaffolding or other equipment as required by WISHA regulations. *Stute,* at 456, 459. The Supreme Court agreed:

> A general contractor's supervisory authority is per se control over the workplace, and the duty is placed upon the general contractor as a matter of law. It is the general contractor's responsibility to furnish safety equipment or to contractually require subcontractors to furnish adequate safety equipment relevant to their responsibilities.

114 Wn.2d at 464. The court echoed its prior decision, *Adkins v. Aluminum Co. of Am.,* 110 Wn.2d 128, 152–53, 750 P.2d 1257, 756 P.2d 142 (1988), in holding that RCW 49.17.060(2) imposes a duty upon an employer to protect not only the employer's own employees from recognized safety hazards, but all employees who might be injured by a failure of the employer to comply with WISHA safety standards or regulations—even employees of a subcontractor. 114 Wn.2d at 460. WAC 296–155–040(2).

*Stute* mandates that Bill's Plumbing owed a duty to Husfloen to ensure compliance with workplace safety regulations. Bill's Plumbing owned the worksite and directed the construction of the residence. By occupying the same position as the general contractor in *Stute,* Bill's Plumbing had a duty to comply, or ensure that employees of subcontractors complied, with safety regulations.

MTA argues that *Stute* does not necessarily demand the conclusion that it owed a duty to Husfloen. MTA maintains

that *Stute* is distinguishable because it involved two rather than three levels of employers as is the case here. This factual distinction is without consequence. Bill's Plumbing had hired MTA, a subcontractor, to build a foundation and in so doing placed MTA's supervisor in charge of the project site on the day the accident occurred. MTA selected Pumpcrete, determined when a pump was needed, and contacted Pumpcrete the morning it wished to pour concrete. Not only did Bill's Plumbing have nothing to do with the selection and hiring of Pumpcrete, no one from the firm was even present at the jobsite on the day the accident occurred. MTA supervised exclusively the actual pouring of the concrete. MTA was possibly in a better position to ensure that Pumpcrete complied with safety regulations than was Bill's Plumbing. Therefore, MTA did not avoid owing a duty to Husfloen merely because it was a subcontractor, not the general contractor of the project.

MTA argues that even if a duty existed, MTA violated no safety regulations, and consequently, did not breach a duty to Husfloen. Husfloen contends that MTA and Bill's Plumbing violated two regulations: WAC 296–155–525(1)(e) and former WAC 296–155–430(3).

WAC 296–155–525(1)(e) required employers to annually inspect hoisting machinery and to keep records of the inspections. Husfloen did not assert in his complaint or his declaration filed in opposition to summary judgment that the electric shock was caused by a malfunction of the concrete pump due to a failure to perform annual inspections. In fact, a report by the Department of Labor and Industries indicated, and nothing in the record contradicted this, that the concrete pump was functioning properly at the time of the accident.

The other regulation cited by Husfloen, however, appears to apply here. Former WAC 296–155–430(3) provides in part:

(b) No work shall be performed . . . nor any tools, machinery or equipment operated within the specified minimum distances from any energized high voltage electrical conductor capable of energizing the material or equipment; except where the electrical distribution and transmission lines have been de-energized and visibly grounded at point of work, or where insulating barriers not a part of or an attachment to the equipment have been erected, to prevent physical contact with the lines, equipment shall be operated proximate to, under, over, by, or near energized conductors only in accordance with the following:

(i) For lines rated 50 kv. or below, minimum clearance between the lines and any part of the equipment or load shall be 10 feet.

. . . .

(h) Any overhead wire shall be considered to be an energized line until the owner of such line or the electrical utility authorities indicate that it is not an energized line and it has been visibly grounded.

After viewing all facts and drawing all inferences in a light most favorable to Husfloen, we conclude that he established prima facie that WAC 296–155–430(3)(b)(i) was violated. Spokesmen for Bill's Plumbing and MTA acknowledged that no one requested the public utility to shut off the power. The owner of Bill's Plumbing admitted that the firm had no safety program and had never discussed safety practices with its subcontractors. MTA's supervisor admitted that when Husfloen reported at the jobsite on the day the injury occurred, no one directed or advised Husfloen where to park his truck. He expected Husfloen to position his truck where he did. The supervisor also stated that he paid little attention to the position of the power lines relative to the position of the pump truck. These facts suggest that MTA and Bill's Plumbing failed to ensure that the boom was operated at a distance greater than 10 feet from the energized power lines. MTA has not shown any facts that contradict that the boom came within 10 feet of the power lines. As was alleged in Husfloen's complaint and admitted by Bill's Plumbing, the boom *contacted* the power lines.

We reverse the trial court and hold that under *Stute,* MTA and Bill's Plumbing had a duty to comply with the safety regulations. None of the parties being entitled to judgment as a matter of law, we remand for trial.

GROSSE, A.C.J., and PEKELIS, J., concur.

Review denied at 115 Wn.2d 1031 (1990).