[No. 54584-7. En Banc. January 10, 1991.]

KIRK HENNIG, *Respondent*, v. THE CROSBY GROUP, INC., *Appellant*.

*Reed McClure Moceri Thonn & Moriarty,* by *William R. Hickman* and *Heather Houston,* for appellant.

*Messina Duffy,* by *John L. Messina* and *Stephen L. Bulzomi,* for respondent.

*Reed McClure Moceri Thonn & Moriarty,* by *Darrell S. Mitsunaga,* for the Port of Seattle.

CALLOW, C.J.—In the fall of 1983, the Port of Seattle engaged Hurlen Construction Company (the employer) to rehabilitate Pier 91 in Seattle. The construction company used a crane to replace old pilings at the pier via "pigeon holes" opened through the deck of the pier. A new piling would be lifted over the "pigeon hole" while a "pile buck" would position the 90–foot, 3,000–pound pile into place. After positioning the piling, the pile buck would signal the crane operator to let the pile fall into the sediment under the pier. The "pile buck" would step away when the pile was released.

During the course of operations on the morning of October 7, 1983, a screw pin, weighing 3 pounds, fell approximately 60 feet from an unused suspended shackle on the crane, striking Kirk Hennig (the employee) on his head. No employee of the construction company had inspected the crane rigging (cables and various pieces of hardware that attach to the item being lifted or moved) that morning as

the boom was still in the air attached to the last piling driven the day before. Although he was wearing a hard hat at the time, the blow fractured Hennig's spine. He is quadriplegic as a result.

The Crosby Group (the manufacturer) had manufactured the S–209 (13½–ton load bearing) screw pin anchor shackle in approximately 1977. The shackle consisted of a rounded shackle bow which served as a nut and a separate pin which served as the bolt. The pin had a rounded head with a hole in the middle. The hole allowed users to secure the pin by tightening it with a "spud wrench" once it was screwed into the shackle.

The pile stabbing process created a high degree of vibration in the crane and the rigging attached to the crane. The vibration apparently caused the screw pin to loosen, "walk out" and ultimately fall from the shackle bow.

The employee brought suit against his employer, the manufacturer, and the Port of Seattle. The trial court entered summary judgment dismissing his claims against both his employer and the Port. The case proceeded to trial on the employee's product liability claims against the manufacturer.

After a 5–week trial, the jury awarded the employee $1,972,263.04. Denying the manufacturer's motion for judgment notwithstanding the verdict, the trial court entered judgment for the employee. The Court of Appeals certified the case to this court.

Following oral argument before this court the parties settled the case, in part, leaving only the issue of whether the trial court erred in dismissing the Port of Seattle.

■ One who engages an independent contractor is not liable for injuries to the employees of the independent contractor. *Tauscher v. Puget Sound Power & Light Co.,* 96 Wn.2d 274, 277, 635 P.2d 426 (1981).

> The general rule is that the owner of premises owes to the servant of the independent contractor employed to perform work on his premises the duty to avoid endangering him by his

own negligence or affirmative act, but owes no duty to protect him from the negligence of his own master.

*Epperly v. Seattle,* 65 Wn.2d 777, 785, 399 P.2d 591 (1965).

Hennig argues that the trial court improperly dismissed the Port of Seattle because the Port retained contractual control over safety aspects of Hurlen's work.

> A common law exception to the general rule of nonliability exists where the employer of the independent contractor . . . retains control over some part of the work. The [employer] then has a duty, within the scope of that control, to provide a safe place of work.

(Citations omitted.) *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 330, 582 P.2d 500 (1978).

The contract gave the Port the authority to inspect Hurlen's work to ensure that it fully complied with the contract provisions. However, this authority does not place the Port within the exception to nonliability. It is one thing to retain a right to oversee compliance with contract provisions and a different matter to so involve oneself in the *performance* of the work as to undertake responsibility for the safety of the independent contractor's employees. "The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship." *Epperly,* 65 Wn.2d at 785.

The contract between the Port and Hurlen assigned to Hurlen the sole responsibility for supervising the safety of the jobsite, and required Hurlen to comply with all appropriate state and federal safety regulations. Because the Port did not actively supervise Hurlen's employees, did not furnish the shackle, had no superior knowledge that it might be defective, and otherwise did nothing to affirmatively increase the risk, the trial court properly dismissed the Port. *See Epperly,* 65 Wn.2d at 787. *See also Bozung v. Condominium Builders, Inc.,* 42 Wn. App. 442, 447, 711 P.2d 1090 (1985); *Fardig v. Reynolds,* 55 Wn.2d 540, 545, 348 P.2d 661 (1960).

The trial court's decision on this remaining issue is affirmed.

UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.