[No. 37283-1-I. Division One. March 24, 1997.]

JULIUS ROGERS, *Appellant*, v. DANIEL IRVING, *Respondent.*

456

BAKER, C.J., concurs in the result by separate opinion.

Roblin J. Williamson, Marie G. Aglion, and Davies, Roberts & Reid, for appellant.

Larry B. Alexander, Joanne M. Barber, and Alexander & Associates, for respondent.

BECKER, J. — Daniel Irving employed Righteous Roofers to put a roof on the house he was building for himself. Julius Rogers, an employee of Righteous Roofers, slipped and fell from the roof and broke his leg. Rogers sued Irving for failure to provide a fall arrest system. Upon Irving's motion for summary judgment dismissal, the trial court dismissed Rogers' claims. We affirm because Irving is not an employer under the Washington Industrial Safety and Health Act (WISHA), and because he owed Rogers no common law duty of care.

██ ██ Because this is an appeal from summary judgment dismissal of plaintiff's claims, this court engages in de novo review.[1] We construe the facts in the light most favorable to Rogers.[2]

## Facts

Daniel Irving, a carpenter, bought property on which he intended to build his home. He drafted plans for the home, cleared the land, and framed the house and garage

---

[1]*Failor's Pharmacy v. Department of Social & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994).

[2]*Failor's Pharmacy*, 125 Wn.2d at 493.

himself. When framing, he established the design that the roof would assume, and made a design decision that the roof would sit at a relatively steep eight-twelve pitch. For jobs outside his expertise, such as plumbing, heating and roofing, he hired independent contractors. To install the roof, Irving hired Righteous Roofing. He neither inspected the work of Righteous Roofing nor paid attention to what kind of safety equipment they used. Irving was on the job site often, but only to take care of details unrelated to construction of the roof.

Righteous Roofing employed Julius Rogers to construct the roof of Irving's house and garage. While working in the rain on the roof of the garage, Rogers slipped on wet plywood and slid down the roof. When he reached the edge of the roof, Rogers dropped 12 - 14 feet to the ground and suffered a compound fracture of his tibia. Neither Rogers nor any other person working on the roof used safety lines to prevent a fall.

Rogers sued Irving for negligently failing to ensure that safety equipment was used by the roofers. Rogers claimed that Irving owed him both a statutory and a common law duty of care. The court below found that Rogers failed to establish a duty under either theory, and dismissed Rogers' claims with prejudice.

### Statutory Duty of Care

The Washington Industrial Safety and Health Act imposes duties on an "employer" as follows:

Each employer:

(1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees: PROVIDED, That no citation or order assessing a penalty shall be issued to any employer solely under the authority of this subsection except where no applicable rule or regulation has been adopted by the department covering the unsafe or unhealthful condition of employment at the work place; and

*(2) Shall comply with the rules, regulations, and orders promulgated under this chapter.*[3]

Only subsection (2) is at issue in the present case. The Supreme Court held in *Stute v. P.B.M.C., Inc.*,[4] that subsection (1) imposes a duty on employers to protect only their own direct employees. By contrast, subsection (2) imposes a specific duty on employers to comply with WISHA safety regulations.[5] "Employers must comply with the WISHA regulations to protect not only their direct employees but all employees on the jobsite."[6]

Rogers claims, and Irving denies, that Irving is an "employer" under subsection (2). Employers, according to regulations promulgated under WISHA, must ensure that fall arrest systems are provided to employees who are exposed to falling more than 10 feet.[7] If Irving is an employer, his failure to see to the presence of a fall arrest system constitutes a violation of his statutory duty to Rogers, even though Rogers was on the premises as an employee of an independent contractor.

WISHA defines an employer as follows:

> The term "employer" means any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons and includes the state, counties, cities, and all municipal corporations, public corporations, political subdivisions of the state, and charitable organizations: PROVIDED, That any person, partnership, or business entity not having employees,

---

[3]RCW 49.17.060 (emphasis added).

[4]*Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 457, 788 P.2d 545 (1990). *See also Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 672-73, 709 P.2d 774 (1985).

[5]*Stute*, 114 Wn. 2d at 457.

[6]*Stute*, 114 Wn.2d at 460.

[7]WAC 296-155-24510.

and who is covered by the industrial insurance act shall be considered both an employer and an employee.[8]

Rogers relies on *Stute* to establish that Irving is an employer with subsection (2) duties. In *Stute*, a general contractor hired a subcontractor to install gutters on a roof. An employee of the subcontractor slipped on the roof and fell to the ground, suffering injuries. The subcontractor's employee sued the general contractor for failure to provide safety equipment. The general contractor argued that it lacked sufficient control over the subcontractor's work to give rise to the alleged duty. The court held that the general contractor's inherent supervisory authority over the worksite was a sufficient basis for imposing the specific subsection (2) duty running to all workers on the premises. The court found that a general contractor is in the best position to coordinate work or provide expensive safety features to protect employees of subcontractors.[9] The court also observed that a general contractor and a subcontractor both fit the statutory definition of "employer":

> Inasmuch as both the general contractor and subcontractor come within the statutory definition of employer, the primary employer, the general contractor, has, as a matter of policy, the duty to comply with or ensure compliance with WISHA and its regulations. A general contractor's supervisory authority places the general in the best position to ensure compliance with safety regulations. For this reason, the prime responsibility for safety of all workers should rest on the general contractor.[10]

Following *Stute* this court determined in *Weinert v. Bronco Nat'l Co.*[11] that the owner/developer in that case also had the specific subsection (2) duty to comply with WISHA regulations. We compared the owner/

---

[8]RCW 49.17.020(3).

[9]*Stute*, 114 Wn.2d at 462.

[10]*Stute*, 114 Wn.2d at 463.

[11]*Weinert v. Bronco Nat'l Co.*, 58 Wn. App. 692, 795 P.2d 1167 (1990).

developer's position to the general contractor in *Stute* and found it had "the same innate overall supervisory authority" and was "in the best position to enforce compliance with safety regulations."[12] There was no dispute that an owner/developer fits the statutory definition of "employer."

In *Doss v. ITT Rayonier, Inc.*[13] we found that the incorporated owner of the worksite fit within the statutory definition of "employer," and "as the owner of the site, had innate supervisory authority that gave it control over the workplace."[14]

Rogers argues that Irving was, in effect, his own general contractor for the building of his home, and had the requisite innate supervisory authority over the workplace that was determinative in both *Stute* and *Weinert*. But even if this is so, Irving does not have the duty of an employer unless he also fits within the statutory description of "employer." The definition of "employer" is a threshold requirement. An entity that does not meet the definition is not an employer, and there is no need to ask, as in *Stute* and *Weinert*, whether the entity in question has supervisory authority comparable to a general contractor.

In previous subsection (2) cases, the defendants held to owe duties to the employees of independent contractors have been business entities organized to make money by employing other persons. In *Stute*, the defendant was a corporation acting as a general contractor in the construction of condominiums. In *Weinert*, the defendant was constructing apartment complexes. In *Husfloen v. MTA Constr. Inc.*,[15] the defendant was a plumbing business directing a construction project. In *Doss*, the defendant

---

[12]*Weinert*, 58 Wn. App. at 696.

[13]*Doss v. ITT Rayonier, Inc.*, 60 Wn. App. 125, 128, 803 P.2d 4, *review denied*, 116 Wn.2d 1034 (1991).

[14]*Doss*, 60 Wn. App. at 128 (footnote omitted).

[15]*Husfloen v. MTA Constr., Inc.*, 58 Wn. App. 686, 794 P.2d 859, *review denied*, 115 Wn.2d 1031 (1990).

operated a mill and had contracted for the cleaning of a boiler.[16] These defendants argued, unsuccessfully, that the duty of an employer depends on the employer having control over the work. None of them took the position that they did not fit the statutory definition of "employer."

 Irving does take that position. He argues that "employer" does not include a homeowner who for his own personal benefit employs independent contractors to perform various jobs on the residence.

Again, an employer for WISHA purposes is:

> any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons . . . .[17]

Rogers claims that Irving satisfies the plain language of the statute because he is a "person . . . which engages in any . . . activity in this state" and he contracted with Righteous Roofing for its personal labor. This reading is unsatisfactory because it fails to account for all the business-related words the Legislature included in the same sentence. In interpreting a statute, the Court of Appeals "must construe the act as a whole, giving effect to all of the language used and harmonizing the provisions, if possible, to ensure proper construction of all the provisions."[18]

The general term "any person" begins a list of entities summarized at the end by the phrase "or other business entity." One may reasonably infer that the Legislature intended "employer" to be synonymous with "business entity," whatever form that entity might take—person,

---

[16]*See also Phillips v. Kaiser Aluminum & Chem. Corp.*, 74 Wn. App. 741, 875 P.2d 1228 (1994) (defendant was corporation owning and operating an aluminum reduction plant).

[17]RCW 49.17.020(3).

[18]*Medcalf v. Department of Licensing*, 83 Wn. App. 8, 20, 920 P.2d 228 (1996), *aff'd* 133 Wn.2d 290, 944 P.2d 1014 (1997).

firm, corporation, partnership, business trust, or legal representative.[19]

The statute does not define "business" or "business entity." "Where the Legislature has not specifically defined a term used in a statute, resort to a dictionary to give meaning to the term is appropriate."[20] BLACK'S LAW DICTIONARY defines "business" as "[e]mployment, occupation, profession, or commercial activity engaged in for gain or livelihood."[21] In building his own home, Irving was pursuing his own personal benefit; he was not engaging in an activity for gain or livelihood.

Homeowners, not being business enterprises, are typically ill-equipped to assume the duties that Rogers' interpretation of "employer" would impose upon them.[22] They are unlikely to know how to provide features such as fall arrest systems, or how to contract for indemnity. Not only would they incur exposure to suit from employees of independent contractors, they would also become potentially liable for payment of fees to the Department of Labor and Industries.[23] In the absence of an unambiguous indication from the Legislature that it intended to include home building and repair projects under WISHA, we hold that the definition of "employer" in RCW 49.17.020(3) does not include a homeowner contracting for work done on his personal residence. We therefore affirm the lower court's

---

[19]*Accord Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 854 n.8, 816 P.2d 75 (1991) ("Further, RCW 49.17 (WISHA) defines 'employer' to include *all business entities* who employ one or more employees or who contract with one or more persons for personal labor. RCW 49.17.020(3)." (Emphasis added.))

[20]*Dawson v. Daly*, 120 Wn.2d 782, 791, 845 P.2d 995 (1993).

[21]BLACK'S LAW DICTIONARY 198 (6th ed. 1990).

[22]This court has previously observed that one does not expect a mere homeowner who employs an independent contractor to operate at the same level as a real estate development company. *Kennedy v. Sea-Land Service, Inc.*, 62 Wn. App. at 854 (referring to RESTATEMENT (SECOND) OF TORTS § 1, cmt. f (1965)).

[23]RCW 49.17.030 (Department of Labor and Industries shall "provide by rule for a schedule of fees and charges to be paid by each employer subject to this chapter" who is not already paying premiums under the industrial insurance laws.).

dismissal of Rogers' negligence claim insofar as it was based on a duty imposed by the WISHA statute.

## Common Law Duty of Care

Rogers also appeals the trial court's dismissal of his claim that Irving, in failing to provide fall arrest systems, violated a common law duty.

■ The Supreme Court, in *Hennig v. Crosby Group, Inc.*,[24] stated the general rule: "One who engages an independent contractor is not liable for injuries to the employees of the independent contractor."

One exception to the general rule exists when the employer of the independent contractor retains control over some part of the work. The employer then has a duty, within the scope of that control, to provide a safe place of work.[25] The Supreme Court explained in *Hennig*:

> It is one thing to retain a right to oversee compliance with contract provisions and a different matter to so involve oneself in the *performance* of the work as to undertake responsibility for the safety of the independent contractor's employees. "The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship."[26]

Although Irving took upon himself the responsibility to oversee his entire home-building project and ensure that Righteous Roofing properly completed its contract, there is no evidence that he so involved himself in the roofing work as to undertake responsibility for the safety of Righteous Roofing's employees. Rogers declared that he felt he would have to follow any instructions given by Irving. But Rogers' subjective impression is insufficient to establish that Irving retained a right to interfere in the methods

---

[24]*Hennig v. Crosby Group, Inc.*, 116 Wn.2d 131, 133, 802 P.2d 790 (1991).

[25]*Hennig*, 116 Wn.2d at 134; *Kelley v. Howard S. Wright Constr.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978).

[26]*Hennig*, 116 Wn.2d at 134 (quoting *Epperly v. City of Seattle*, 65 Wn.2d 777, 785, 399 P.2d 591 (1965) (emphasis in original)).

used to install the roof. The trial court correctly refused to impose a duty based on the "retained control" exception.

■ ■ Rogers next contends that Irving had a duty to protect him because his work was inherently dangerous. Special rules pertaining to inherently dangerous activities are designed to protect third persons who might be harmed by such activities, not those who knowingly take part in them. An employer's liability does not extend to employees of independent contractors "merely because of the presence of inherently dangerous activities."[27] Rogers relies on an exception to this general rule suggested by *Kelley v. Howard S. Wright Constr. Co.*[28]

In *Kelley*, the Supreme Court said that a duty to take precautions arises where a general contractor has reason to know that the work in question has inherent hazards.[29] But the Supreme Court later clarified, in *Tauscher v. Puget Sound Power & Light Co.*,[30] that it had imposed liability in *Kelley* primarily on a different basis.

In *Tauscher*, an apprentice electrical lineman, employed by an independent contractor to work on Puget Power's lines, was electrocuted while working without protective barriers. The court emphasized that the lineman appreciated the danger of working around energized lines.[31] Instead of applying the possible exception recognized in *Kelley*, the court restricted the reach of *Kelley* and reaffirmed its earlier decision in *Epperly v. City of Seattle*.[32] *Epperly* holds that an owner's duty "extends only to latent dangers which the contractor or his servants could not reasonably

---

[27]*Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 279, 635 P.2d 426 (1981).

[28]*Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978).

[29]*Kelley*, 90 Wn.2d at 332.

[30]*Tauscher*, 96 Wn.2d at 278.

[31]*Tauscher*, 96 Wn.2d at 280.

[32]*Epperly v. City of Seattle*, 65 Wn.2d 777, 399 P.2d 591 (1965).

have discovered and of which the owner knew or should have known."[33]

The controlling cases are thus *Tauscher* and *Epperly*, not *Kelley*. Because the danger of falling from a steep roof is obvious, Rogers remains within the scope of the general rule of owner nonliability to employees of independent contractors.

Affirmed.

ELLINGTON, J., concurs.

BAKER, C.J. (concurring) — I agree with the conclusion of the majority opinion. However, I do not agree that the issue of whether one is an employer, as defined in WISHA,[34] can be determined by whether or not one is a business entity.

The majority opinion holds that the question of whether one is an employer can be answered without regard to whether one has any actual or legal control over the worksite. Instead, the majority proposes a two-stage analysis. First, we would determine whether an owner or occupier of the land where the work is being performed is an employer. That determination can be made, according to the majority, by looking at the status of the owner or occupier. Only if it is a business entity "organized to make money by employing other persons" can it be an employer.[35] If it is such an employer, then we would look to see if the employer retained sufficient control over the work to impose upon it the statutory obligation of an employer to comply with applicable safety regulations on the worksite.

I respectfully disagree with the majority's analysis. First, the statutory definition of employer is not restricted to business entities "organized to make money by employ-

---

[33]*Epperly*, 65 Wn.2d at 786.

[34]RCW 49.17.020(3).

[35]Majority at 461.

ing other persons."[36] The statutory definition includes "persons," as well as corporations and other business entities. For example, the proviso in this statute states: "PROVIDED, That any person, partnership, or business entity not having employees, and who is covered by the industrial insurance act shall be considered both an employer and an employee."[37] If "employee" means only business entities, no purpose would be served by the proviso's reference to "person, partnership, *or* business entity."[38] The statute does not distinguish between or among employers suggested by the majority.

Second, the statute does not admit a two-stage analysis. If one is determined to be an employer under the act, then one is subject to the safety related duties of an employer. Under WISHA, an employer "[s]hall comply with the rules, regulations, and orders promulgated under this chapter."[39]

The status of the owner of the property where the worksite is located should not be determinative. Absent the factor of control over the worksite, it should be irrelevant whether the *owner* is an individual or a business entity. It is more useful to focus on the status of the person or entity with whom the owner contracts. An owner—business entity or not—should be able to contract with a person or firm in the business of performing the type of work called for in the contract without becoming an "employer" under RCW 49.17.020(3). A principal reason for an owner to so contract is to be able to rely upon the experience and expertise of the hired contractor, both to do the work and to know and enforce applicable safety regulations.

As I read the statutory definition of employer, it tracks this reasoning. One cannot be an employer under the act unless one has employees, or "contracts with one or more

---

[36]Majority at 461.

[37]RCW 49.17.020(3).

[38]RCW 49.17.020(3) (emphasis added).

[39]RCW 49.17.060(2).

persons, the essence of which is the personal labor of such person or persons."[40]

If, instead of contracting with Righteous Roofing, Irving had contracted with two or more college students to do the roofing work on his house, he would in my opinion have contracted for the personal labor of those persons, and become an employer, as defined by RCW 49.17.020(3). Once someone does that, they become subject to the WISHA requirement to "furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death . . . ."[41]

When analyzing whether one is an employer under WISHA, I would focus on the status of the persons or entities who are contracted to do the work, rather than on the status of the owner as a business or nonbusiness entity.