[No. 20374-0-II.    Division Two.    February 13, 1998.]

CARMEL M. SMITH, *as Personal Representative, Appellant*, v. DENNIS MYERS, ET AL., *Respondents*.

*Cydney Campbell* of *Lundberg & Peschel, P.S., Inc.,* for appellant.

*Robert N. Gellatly* of *Helsell, Fetterman, L.L.P.,* for respondents.

SEINFELD, J. — Carmel Smith appeals a summary judgment dismissing her wrongful death action against Dennis and Jane Myers. She claims that the decedent, an employee of a contractor retained by Myers to construct their home, sustained an on-the-job injury that later caused his death. Finding that the homeowner, under the circumstances here, did not have a statutory duty to comply with WISHA regulations and further finding inapplicable the "retained

"control" exception to the common-law rule of nonliability, we affirm.

## FACTS

Dennis and Jane Myers (Myers) purchased the drawings and lumber for a prefabricated home from Linwood Homes, Ltd., in 1991. Because Myers had no experience in the construction industry and no knowledge of construction safety measures, they retained professional contractors to assemble and finish the house. Myers assumed responsibility for obtaining the building permit, arranging for inspections, and hiring and coordinating the contractors.

Based on Linwood's recommendation, Myers contracted with Anthony's Custom Construction (ACC) to do the foundation, the framing, and the roofing. The contract was silent as to responsibility for safety measures. Myers, assuming that ACC would supervise its own employees, gave ACC's workers no instructions about building techniques or workplace safety procedures. Myers merely instructed them to follow the building plans.

Myers also hired at least nine other contractors or individuals to complete various phases of the construction project. During construction, Dennis Myers went to the site at least once per week, sometimes on weekdays but usually on weekends. He met personally with some of the contractors at the worksite.

In January 1992, a window that the workers were hoisting into place fell and hit Robert Judson's leg. Judson, who was not wearing a safety harness, lost his balance, fell, and injured his back. Although he began experiencing pain, he continued working for ACC for about one more month and later obtained work as a carpenter for another company.

But the back pain increased and in September a physical therapist told him that he might not be able to work again as a carpenter. Vocational testers told him that he would need to retrain for another profession. According to Smith, the personal representative of Judson's estate, Judson

became so frustrated and depressed over his inability to continue working as a carpenter that he committed suicide the following February.

Almost two years later, in January 1995, Smith, as personal representative of Judson's estate, filed this wrongful death action against Myers. That spring, Smith deposed Dennis Myers and obtained ACC's quarterly tax records. This allowed her to identify Christopher Hutchins, Alexander Fellenz, and Thomas Lynch as potential witnesses to the accident.

Smith mailed a questionnaire to Fellenz, which he did not return. Hutchins, however, advised her in a telephone conversation about the location and height from where Judson fell; the fact that Judson was not wearing any safety device; and the degree of control that Myers retained over the construction site. Smith then mailed Hutchins a questionnaire for use in preparing an affidavit but Hutchins did not return the questionnaire or voice mail messages that Smith left him in August, September, and October.

On November 16, 1995, Myers moved for summary judgment, claiming a lack of evidence of negligence, and arguing that, as a matter of law, they had no duty to prevent the accident. In response, Smith argued that Myers acted as general contractors and, thus, had a statutory duty to comply with applicable safety regulations. Relying on the "retained control" doctrine, she also contended that Myers had a common-law duty to provide a safe workplace. Finally, Smith sought a continuance to obtain affidavits from and depose Hutchins, Fellenz, and Lynch.

The trial court denied the continuance request and granted Myers's motion for summary judgment.

## DISCUSSION

### I. Summary Judgment

Appellate courts review an order of summary judgment by engaging in the same inquiry as the trial court. *Bozung*

*v. Condominium Builders, Inc.*, 42 Wn. App. 442, 445, 711 P.2d 1090 (1985). Summary judgment is proper where no genuine issue of material facts exists and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party and determine whether reasonable persons could reach but one conclusion. *Bozung*, 42 Wn. App. at 445.

A. WISHA Regulations

Smith contends that Myers had a statutory duty under RCW 49.17.060(2) and *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990), to comply with the Washington Industrial Safety and Health Act (WISHA).

WISHA defines "employer" as

> any person, firm, corporation, partnership, business trust, legal representative, *or other business entity* which engages in any business, industry, profession, or activity in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons . . . .

Former RCW 49.17.020(3) (1973) (emphasis added). The statute imposes the following duties upon an employer:

> (1) . . . [F]urnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees: . . .
>
> (2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

RCW 49.17.060.

■ The WISHA definition of employer does not include a residential property owner who engages an independent contractor to do work on his personal residence. *Rogers v. Irving*, 85 Wn. App. 455, 463, 933 P.2d 1060 (1997). The *Rogers* court inferred from the words "or other business entity" in former RCW 49.17.020(3) that "the Legislature

intended 'employer' to be synonymous with 'business entity,' whatever form that entity might take—person, firm, corporation, partnership, business trust, or legal representative." 85 Wn. App. at 462-63. Thus, a carpenter building his own home would not be an "employer" because "he [is] not engaging in an activity for gain or livelihood." *Rogers*, 85 Wn. App. at 463. Further, homeowners, not being business enterprises, are typically ill-equipped to assume the duties that WISHA places upon employers. *Rogers*, 85 Wn. App. at 463.

Here, Myers, like the carpenter in *Rogers*, are residential property owners who hired independent contractors to do work on their personal residence. They were not engaging in a business activity and were not "employers" within the meaning of WISHA. Therefore, they were not subject to WISHA regulations regarding workplace safety. *Rogers*, 85 Wn. App. at 463.

Further, the cases that Smith relies upon, *Stute*, 114 Wn.2d 454, and *Husfloen v. MTA Constr. Inc.*, 58 Wn. App. 686, 794 P.2d 859 (1990), are distinguishable. The *Stute* case and its progeny establish that with respect to multi-employer worksites, the general contractor or an owner/developer has the responsibility to comply with WISHA regulations as to *all* employees on the jobsite, not just its own. 114 Wn. 2d at 457-60. *See also Doss v. ITT Rayonier, Inc.*, 60 Wn. App. 125, 803 P.2d 4 (1991); *Weinert v. Bronco Nat'l Co.*, 58 Wn. App. 692, 795 P.2d 1167 (1990); *Husfloen*, 58 Wn. App. at 689. The general contractor appropriately bears the *primary* responsibility for workplace safety because it has the "innate supervisory authority" and means to either furnish safety equipment or to contractually require subcontractors to furnish such equipment. *Stute*, 114 Wn.2d at 463-64.

But here, in contrast to *Stute*, Myers are not a statutory "employer" under WISHA. 114 Wn.2d at 462. Further, unlike general contractors and owner/developers, they lack the knowledge, experience, ability, and means to "provide expensive safety features" or effectively enforce safety standards. *Stute*, 114 Wn.2d at 462.

Nor are Myers general contractors who also happen to own a residential construction site, as was the situation in *Husfloen*. The *Husfloen* court held that the general contractor/owner had a duty to comply, or ensure that employees of subcontractors complied, with safety regulations. *Husfloen*, 58 Wn. App. at 689. The court's description of the general contractor in *Husfloen* indicated that it was a business entity; the decision does not indicate that the "owner" was building his personal residence.

■ Finally, Smith asserts that because Myers did not hire a general contractor and because the contract with ACC did not expressly require ACC to bear responsibility for workplace safety, Myers were responsible for compliance with safety regulations. But ACC, as an employer, had a direct statutory duty to provides its employees with a safe workplace and comply with WISHA regulations regardless of the contract terms with Myers. RCW 49.17.060.

B. The "Retained Control" Exception

Smith claims that Myers had *per se* control over the workplace and, thus, came within the "retained control" exception to the common-law rule of nonliability.

■ The general rule at common law is that one who engages an independent contractor is not liable for injuries to the independent contractor's employees resulting from their work. *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978) (citing *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 549 P.2d 483 (1976)). But an exception to this rule exists when the employer of the independent contractor "retains control over some part of the work." *Kelley*, 90 Wn.2d at 330. In that situation, the employer has a duty, within the scope of that control, to provide a safe workplace. *Kelley*, 90 Wn.2d at 330. The "retained control" exception applies, however, only when one who engages an independent contractor retains *actual* control over the workplace and affirmatively assumes responsibility for project safety. *See Hennig v. Crosby Group, Inc.*, 116 Wn.2d 131, 134, 802 P.2d 790 (1991); *Straw v. Esteem Constr. Co.*, 45 Wn. App. 869, 874, 728 P.2d 1052 (1986); *Bozung*, 42 Wn. App. at 445-46.

Smith contends that the following broad language used by the *Kelley* court supports the applicability of the "retained control" exception here: "The test of control is not the actual interference with the work of the subcontractor, but the right to exercise such control." 90 Wn.2d at 330-31 (citing *Fardig v. Reynolds*, 55 Wn.2d 540, 348 P.2d 661 (1960)). But decisions filed after *Kelley* have clarified and limited this language. Specifically, the "retained control" exception does not apply if the entity or individual engaging the independent contractor does not actively supervise the independent contractor's employees and does not affirmatively assume responsibility for workplace safety. *See, e.g., Hennig*, 116 Wn.2d at 134-35 (Port of Seattle not liable to construction company because it did not actively supervise employees, furnish the equipment that caused the injury, have superior knowledge that the equipment might be defective, or affirmatively increase the risk); *Rogers*, 85 Wn. App. 457 (carpenter building home for himself who did not inspect roofing company's work or use of safety equipment not liable to roofing company employee notwithstanding carpenter's assumption of oversight responsibility and frequent presence on jobsite); *Straw*, 45 Wn. App. at 874-75 (absent affirmative assumption of responsibility for safety, general contractor's coordination, inspection, and supervision of work did not establish duty to make premises safe for subcontractor's employees); *Bozung*, 42 Wn. App. at 447 (general contractor's right to order work stoppage, to control work order, and to inspect work progress does not prove its control over subcontractor's safety practices). At oral argument, Smith acknowledged that there was no evidence that Myers actually assumed this responsibility.

Smith claims the following evidence establishes a genuine issue of material fact regarding the "retained control" exception:

(1) The construction manual provided:

It is assumed that the individual erecting the Linwood Home has a basic knowledge of carpentry & house building. There are many publications available that will help

familiarize you with such things as terminology and common building practices.

(2) Dennis Myers obtained the building permit as the general contractor.

(3) Myers hired multiple independent contractors to assist construction.

(4) The Myers-ACC agreement was silent as to responsibility for workplace safety.

(5) ACC did not act as a general contractor and was not at the job site throughout the entire construction period.

(6) Dennis Myers visited the worksite at a minimum of once per week and met with most of the subcontractors at the construction site.

(7) Dennis Myers talked with Judson over eight times at the site.

(8) Dennis Myers gave directions to the backhoe subcontractor regarding the location of trenches for electrical and water lines.

(9) Dennis Myers arranged for inspections and the inspection record indicates that he is the contractor.

Assuming the truth of these allegations, as we must, they are insufficient as a matter of law to prove the applicability of the "retained control" exception. As the *Hennig* court stated:

It is one thing to retain a right to oversee compliance with contract provisions and a different matter to so involve oneself in the performance of the work as to undertake responsibility for the safety of the independent contractor's employees. "The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship."

116 Wn.2d at 134 (quoting *Epperly v. Seattle*, 65 Wn.2d 777, 785, 399 P.2d 591 (1965)). Here, Myers did not give directions to any ACC employee regarding workplace safety

or construction techniques; did not contractually assume responsibility for workplace safety or for the supervision of ACC's employees; and did nothing to affirmatively increase the risk.

Further, for the reasons discussed above, Myers's per se control over the workplace is not a persuasive reason to apply the "retained control" exception. For purposes of WISHA compliance, a general contractor has per se control over the workplace and, thus, has a statutory duty to comply with WISHA regulations with regard to all employees on the worksite. *Stute*, 114 Wn.2d at 464. But the *Stute* duty applies only if the general contractor meets the statutory definition of an "employer," which is not the situation here. *Rogers*, 85 Wn. App. at 461-62.

Because Myers were not "employers" within the meaning of WISHA, they did not have a statutory duty of care. *Rogers*, 85 Wn. App. at 461. Because they neither actively supervised ACC's employees nor affirmatively assumed responsibility for safety, they did not have a common-law duty of care under the "retained control" exception. *Rogers*, 85 Wn. App. at 464-65. Thus, the trial court properly granted Myers's motion for summary judgment.

## II. Denial of Motion for Continuance

Smith contends that the trial court improperly denied her CR 56(f) request for a continuance because ACC's employees, Hutchins, Fellenz, and Lynch, had relevant information and she provided a good reason why she could not obtain their affidavits in time for the summary judgment proceeding.

CR 56(f) provides:

**When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to taken or discovery to be had or may make such other order as is just.

Appellate courts review the granting or denial of a continuance pursuant to CR 56(f) for a manifest abuse of discretion. *Van Dinter v. City of Kennewick*, 64 Wn. App. 930, 936, 827 P.2d 329 (1992) (citing *Lewis v. Bell*, 45 Wn. App. 192, 196, 724 P.2d 425 (1986)). When a party opposing summary judgment shows a good reason why an affidavit of a material witness cannot be obtained in time for a summary judgment proceeding, the court must give the parties a reasonable opportunity to complete the record before ruling. *Cofer v. County of Pierce*, 8 Wn. App. 258, 262-63, 505 P.2d 476 (1973) (witness was hospitalized); *see also Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 90-91, 838 P.2d 111, 845 P.2d 1325 (1992) (opposing counsel failed to provide requested documents when asked informally and when served with requests for production); *Coggle v. Snow*, 56 Wn. App. 499, 508, 784 P.2d 554 (1990) (new counsel retained during the summary judgment proceedings). But the trial court may properly deny a request for a continuance if the requesting party does not provide a good reason for the delay, state what evidence the party would obtain if granted more time, and show that the additional evidence would raise a genuine issue of material fact. *Ernst Home Ctr., Inc. v. United Food & Commercial Int'l Union Workers*, 77 Wn. App. 33, 49, 888 P.2d 1196 (1995); *Van Dinter*, 64 Wn. App. at 937.

Myers defended on the basis that they had no duty under either RCW 49.17.060 or the "retained control" exception. Smith provided no information countering this. She gave no indication as to the evidence that ACC employees Fellenz and Lynch might provide. With regard to Hutchins, she said that he could speak to accident details and violations of safety standards. But because neither contradicts Myers's defense, this evidence does not raise an issue of material fact. *See Van Dinter*, 64 Wn. App. at 937.

In a conclusory statement, Smith also said that Hutchins could provide evidence as to the "degree of control" retained by Myers. But without any specific description of the nature of that evidence, this is insufficient to raise an issue of material fact. Consequently, the trial court did not abuse its discretion in denying the continuance motion.

We affirm.

BRIDGEWATER, A.C.J., and HUNT, J., concur.