[No. 12984-1-II.   Division Two.   January 7, 1991.]

CECILLE DOSS, *Individually and as Personal Representative, Appellant,* v. ITT RAYONIER, INCORPORATED, ET AL, *Respondents.*

---

126

*Edward F. Boyer* and *Walthew, Warner, Costello, Thompson & Eagan, P.S.,* for appellant.

*Timothy R. Gosselin* and *Burgess, Kennedy, Fitzer & Strombom, P.S.,* for respondents.

WORSWICK, C.J.—Nick Swagerty worked for Del–Hur Industries, an independent contractor that ITT Rayonier, Inc., hired for periodic boiler cleaning at its Port Angeles mill. A big chunk of slag fell from above him and killed Swagerty while he was cleaning the inside of a boiler. A safety net over Swagerty, required by a WISHA[1] regulation, might have prevented the tragedy.

Cecille Doss, Swagerty's personal representative, appeals summary judgment dismissing her wrongful death action against Rayonier. The dispositive issue is whether Rayonier owed Swagerty a duty to comply with WISHA regulations. We reverse, holding that it did.

There is no written contract between Rayonier and Del–Hur in the record, but we do know that Rayonier required Del–Hur to comply with "applicable" safety regulations, that both assigned safety supervisors to the job, and that,

---

[1] Washington Industrial Safety and Health Act of 1973, RCW 49.17.

although he kept close watch on the work, Rayonier's supervisor did not insist on the use of safety nets.

RCW 49.17.060 provides:

> Each employer:
> (1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees . . . and
> (2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

WAC 296–155–230(1)(c), promulgated under RCW 49.17, states:

> Safety nets shall be provided wherever workers are permitted to be underneath a work area not otherwise protected from falling objects. In such cases, nets shall be lined with a mesh of size and strength sufficient to contain tools and materials capable of causing injury. Net linings shall be of not more than 1–inch mesh and be constructed of synthetic twine not less than No. 18–inch size or of wire not less than 22 gauge.

In *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990), our Supreme Court held that a general contractor has a duty to comply with WISHA regulations for the protection of *all* employees on the jobsite, whether its own or those of an independent subcontractor.[2] The court distinguished subsection (1) of RCW 49.17.060, the language of

---

[2]Here, of course, Rayonier is an owner and Del–Hur is an independent contractor. There is no significant difference, however, between an owner–independent contractor relationship and a general contractor–subcontractor relationship. *See, e.g., Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978). Indeed, applying the rule in *Stute*, discussed above, Division One of this court stated:

> We do not overlook the fact that [defendant] is an owner/developer [of apartment complex] rather than a general contractor hired by an owner. We see no significance to this factor insofar as applying *Stute* to the facts of this case. The owner/developer's position is so comparable to that of general contractor in *Stute* that the reasons for the holding in *Stute* apply here. The purpose of the statutes and regulations relied upon in *Stute* is to protect workers. The basis for imposing the duty to enforce those laws on a general contractor exists with respect to an owner/developer who, like the general contractor, has the same innate overall supervisory authority and is in the best position to enforce compliance with safety regulations.

*Weinert v. Bronco Nat'l Co.*, 58 Wn. App. 692, 696, 795 P.2d 1167 (1990) (owner/developer liable for injuries sustained by employee of construction company hired by siding subcontractor; employee fell from scaffolding erected by his own

which limits its application to an employer's own employees, from subsection (2), which is not so limited. The court rejected a claim that the duty imposed by subsection (2) attached only if the general contractor controlled the work of the subcontractor. It said:

> Inasmuch as both the general contractor and subcontractor come within the statutory definition of employer, the primary employer, the general contractor, has, as a matter of policy, the duty to comply with or ensure compliance with WISHA and its regulations. A general contractor's supervisory authority places the general in the best position to ensure compliance with safety regulations. For this reason, the prime responsibility for safety of all workers should rest on the general contractor.
>
> . . . .
>
> Thus, to further the purposes of WISHA to assure safe and healthful working conditions for every person working in Washington, RCW 49.17.010, we hold the general contractor should bear the primary responsibility for compliance with safety regulations because the general contractor's innate supervisory authority constitutes sufficient control over the workplace.

*Stute*, 114 Wn.2d at 463–64.

■ As did the general contractor and subcontractor in *Stute*, both Rayonier and Del–Hur meet the statutory definition of "employer."[3] Rayonier, as the owner of the site, had innate supervisory authority that gave it control over the workplace.[4] The *Stute* holding applies to this case;

---

employer, and no evidence showed that owner/developer had participated in erecting scaffolding).

[3]RCW 49.17.020(3) states:
"The term 'employer' means any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons and includes the state, counties, cities, and all municipal corporations, public corporations, political subdivisions of the state, and charitable organizations: *Provided,* That any person, partnership, or business entity not having employees, and who is covered by the industrial insurance act shall be considered both an employer and an employee." WAC 296–155–012(12) provides the same definition of employer.

[4]Rayonier contends that the safety net regulation does not apply here anyway, because it contemplates that a worker would be underneath an area occupied by

Rayonier had a duty, running to Del–Hur's employees, to comply with the safety net regulation.

Rayonier also argues that it has no duty arising out of a violation of the WISHA regulation, because the common law doctrine of negligence per se, based on violation of a statute or regulation, has been abolished in this state by RCW 5.40.050 (Laws of 1986, ch. 305, § 901). We disagree. ■ RCW 5.40.050 reads:

A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence [5] . . ..

The statute eliminates no duty created by statute or regulation; in fact it expressly recognizes such duties. It merely lessens their legal impact.

■ Existence of a duty is a common law element of negligence. A duty can arise either from common law principles or from a statute or regulation. *Bernethy v. Walt Failor's, Inc.,* 97 Wn.2d 929, 932, 653 P.2d 280 (1982). *See also Herberg v. Swartz,* 89 Wn.2d 916, 922, 578 P.2d 17 (1978) (concept of negligence per se permits a court to substitute legislatively required standards of conduct for lesser common law standards of reasonableness). The practical effect of RCW 5.40.050 is to eliminate what might be called the "strict liability" character of statutory violations under

---

other workers. We disagree. The regulation requires nets "underneath a work area not otherwise protected from falling objects." WAC 295–155–230(1)(c). Given the act's broad purpose of protecting workers, RCW 49.17.010, the regulation is obviously intended to protect workers from falling debris, whatever the source, and not just from the actions of other workers.

[5]The statute is effective for claims filed after August 1, 1986, Laws of 1986, ch. 305, § 910, and Doss filed her claim August 19, 1987.

The main cases interpreting the duty imposed by RCW 49.17.060(2) to comply with WISHA regulations were based on claims filed before the effective date of RCW 5.40.050. *See Stute v. P.B.M.C., Inc.,* 114 Wn.2d 454, 788 P.2d 545 (1990); *Adkins v. Aluminum Co. of Am.,* 110 Wn.2d 128, 143–44, 750 P.2d 1257, 756 P.2d 142 (1988).

One decision based on a claim filed after the effective date does not refer to the tort reform provision. *Husfloen v. MTA Constr., Inc.,* 58 Wn. App. 686, 794 P.2d 859 (1990).

the old negligence per se doctrine, but to allow a jury to weigh the violation, along with other relevant factors, in reaching its ultimate determination of liability.

■ Because of its influence over safety aspects of the boiler cleaning, Rayonier owed Swagerty a common law duty to exercise ordinary care for his safety. *Kelley v. Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 330, 582 P.2d 500 (1978). Pursuant to RCW 5.40.050, the jury in this case should be instructed on that duty, and further instructed that a violation of any pertinent statute or regulation may be considered as evidence of breach of that duty.[6]

We have considered Doss's other contentions and find them without merit.

Reversed and remanded for trial.

ALEXANDER and MORGAN, JJ., concur.

Reconsideration denied February 27, 1991.

Review denied at 116 Wn.2d 1034 (1991).

---

[6]The Washington Supreme Court Committee on Jury Instructions suggested the following instruction after adoption of RCW 5.40.050:

"The violation, if any, of a [statute] [ordinance] [administrative rule] is not necessarily negligence, but may be considered by you as evidence in determining negligence.

"[Such a violation may be excused if it is due to some cause beyond the violator's control, and which ordinary care could not have guarded against.]" WPI 60.03.