[No. 51658-2-I.   Division One.   January 20, 2004.]

ELIZABETH F. KINNEY, *Appellant*, v. THE SPACE NEEDLE CORPORATION, *Respondent*.

*Patrick A. Palace*; and *Stephen L. Bulzomi* (of *Messina/ Bulzomi*), for appellant.

*Robert L. Christie* (of *Johnson Christie Andrews & Skinner, P.S.*), for respondent.

GROSSE, J. — An employer is liable for injuries to the employees of an independent contractor when the employer retains the right to control and direct the manner in which the independent contractor's employees perform their work. Here, unlike in *Kamla v. Space Needle Corp.*,[1] Elizabeth Kinney, an employee of independent contractor Pyro-Spectaculars, Inc., presented sufficient evidence to raise a material factual question about whether The Space Needle Corporation assumed responsibility for the safety of Pyro-Spectaculars, Inc.'s workers. Reversed and remanded.

## FACTS

Elizabeth Kinney worked for Pyro-Spectaculars, Inc. (Pyro), a professional fireworks display company. The Space Needle Corporation (the SNC) hired Pyro to set up a fireworks display on the Space Needle in May of 1996 to celebrate the Olympic Torch passing through Seattle. Pyro had previously set up fireworks displays at the Space Needle in 1994, 1995, and 1996. Unlike those displays, this one was to have fireworks placed on the antenna deck, the highest level of the Space Needle.

In May 1996, the SNC's facility manager was Patrick M. Lawson. He was in charge of security and safety while the Pyro employees installed the fireworks. Pyro outlined safety concerns for the Space Needle because its employees usually did land-based or barge displays. Pyro did not have all the necessary safety equipment to work at heights. The SNC provided the safety equipment including safety lanyards, harnesses, hoists, couplings, and safety lines with

---

[1] *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 52 P.3d 472 (2002).

stops that prevented employees from falling beyond the edge of the roof. Lawson instructed the Pyro employees regarding required safety procedures for the Space Needle. In a declaration prepared for this case, Lawson stated he had the responsibility to control security and safety issues for the Pyro crew. He controlled the time of access and how Pyro employees accessed the structure, as well as how Pyro employees traveled about the Space Needle. He said he controlled and retained the right to stop Pyro employees from working, especially when bad weather conditions occurred. Specifically, Lawson stated:

> It was part of my job to continue to check and regulate the safety practices of the Pyro Spectacular employees and it was our job to control all safety issues and to make certain that all the Pyro Spectacular employees were working safely on the Space Needle, particularly on the roof.

The SNC's employees supervised and monitored Pyro employees on a regular basis and sometimes on a continuous basis.

As a Pyro employee, Kinney first worked on the Space Needle location in 1994. Previously her work was on the lower levels of the Space Needle. On May, 7, 1996, Kinney was assigned to set up the fireworks on the antenna roof. To get to this roof, a person had to climb a 19-foot ship's ladder to a small platform barely large enough for one to stand. From that platform a person had to climb a vertical 9-foot ladder to the roof access hatch. The 9-foot ladder had small round rungs, painted with glossy paint. The ladder did not extend to the roof as its top rung was several inches below the rim of the hatch opening.

The SNC's maintenance manager, Paul Thompson, helped Kinney and another Pyro employee access the antenna deck on May 7, 1996. Kinney had no experience working on this upper roof and was not familiar with the access ladders to the roof, the hatch access, or the roof. Thompson provided the safety gear and checked Kinney's harness and attached the safety lanyard. He opened the roof hatch and transported the necessary tools to the roof.

He proceeded to assist Kinney and the other Pyro employee up to the roof, and attached the safety lanyards around the railing thereon. Kinney's safety line did not have a line stop attached and was longer than the distance to the edge of the roof.

While on the roof, Kinney asked Thompson to get additional equipment. He left the roof to obtain it. It began to rain but Kinney continued to work on the exposed roof. While Thompson was away, Kinney's fellow worker began to panic and it was necessary for Kinney to assist her co-worker off the roof. Kinney had difficulty stepping through the hatch and onto the ladder. However, she made it to the top of the upper ladder. There she kept eye contact with her co-worker, trying to assist his descent. The small glossy rungs of the upper ladder were wet from the rain. As she started to descend the ladder to allow space for her co-worker to come down, she lost her footing. She fell to the small ledge below, which temporarily broke but did not stop her fall. She continued to fall the distance of the second ladder to the floor below. As noted above, Kinney's safety rope did not have a line stop and was longer than the approximately 28 feet she fell in the inside core of the Space Needle to the mechanic's deck below. Kinney sustained severe injuries.

The SNC moved for summary judgment, arguing that Pyro was an independent contractor and it had no duty to ensure Kinney's safety. The trial court agreed and granted the SNC's motion, dismissing the case. Kinney sought direct review of the case to the state Supreme Court. Briefing was stayed pending the Supreme Court's decision in *Kamla v. Space Needle Corp.*[2] After *Kamla* was decided, the case was transferred to this court.

## DISCUSSION

█ Kinney claims the trial court erred in granting summary judgment because there is evidence the SNC retained

---

[2] *Kamla*, 147 Wn.2d 114.

the right of control over Pyro's work.[3] Generally, an employer is not liable for injuries to the employees of an independent contractor unless the employer retains the right to control and direct the manner in which the independent contractor's employees perform their work.[4] The test of control is not the actual interference with the work of the subcontractor, but the right to exercise such control.[5]

> It is one thing to retain a right to oversee compliance with contract provisions and a different matter to so involve oneself in the *performance* of the work as to undertake responsibility for the safety of the independent contractor's employees. "The retention of the right to inspect and supervise to insure the proper completion of the contract does not vitiate the independent contractor relationship."[6]

Here, contrary to the evidence presented in *Kamla*, Kinney brought forth a sufficient quantum of evidence to survive summary judgment. She provided evidence from the SNC's facility manager and building engineer stating that the SNC retained control over the manner in which Pyro completed its work, especially in the area of safety. Unlike *Kamla*, the evidence suggests that the SNC supplied the safety equipment and may have assumed responsibility for the safety of Pyro's employees. The SNC does not specifically rebut any of the declarations of its former employees expressly stating they actively supervised and actually controlled all safety activities of Pyro employees,

---

[3] The usual standard of review for summary judgment applies. Summary judgment under CR 56(c) is proper if the pleadings, affidavits, depositions, and admissions on file, viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. *Iwai v. State*, 129 Wn.2d 84, 95-96, 915 P.2d 1089 (1996); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[4] *Kamla*, 147 Wn.2d at 119-22.

[5] *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330-31, 582 P.2d 500 (1978).

[6] *Hennig v. Crosby Group, Inc.*, 116 Wn.2d 131, 134, 802 P.2d 790 (1991) (quoting *Epperly v. City of Seattle*, 65 Wn.2d 777, 785, 399 P.2d 591 (1965)).

especially those working on the antenna roof.[7] There is sufficient evidence to raise a material question of fact.

■ In addition, Kinney argues the SNC breached the duty of care that it owed under the Washington Industrial Safety and Health Act of 1973 (WISHA).[8] The SNC countered that it did not owe a duty because it did not exercise control over the manner in which Pyro completed its work.

In this state, general contractors have a nondelegable duty to ensure compliance with all WISHA regulations for the protection of all employees on the jobsite, whether its own employees or those of an independent subcontractor.[9] Appellate courts have, in certain situations, extended the rule of *Stute v. P.B.M.C., Inc.* to jobsite owners, not just general contractors.[10] For instance, in *Doss v. ITT Rayonier, Inc.*, the court noted ITT Rayonier was a jobsite owner and not a general contractor, but found "no significant difference . . . between an owner-independent contractor relationship and a general contractor-subcontractor relationship."[11]

While jobsite owners are not per se liable under the statutory requirements of chapter 49.17 RCW, they may retain a similar degree of authority to control jobsite work conditions and subject themselves to WISHA regulations.[12] This is true where a jobsite owner is in a better position to

---

[7] Although there is no specific rebuttal of the declarations of the former SNC employees, there are affidavits from others, specifically Pyro's executive vice president, indicating that the SNC did not interfere, control, or have other authority over Pyro's employees working on the Space Needle.

[8] Chapter 49.17 RCW. (Before the injuries here, the SNC had been cited for WISHA violations, many in the same area where Kinney was working when she was injured.)

[9] RCW 49.17.060; *Kamla*, 147 Wn.2d at 122 (citing *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 464, 788 P.2d 545 (1990)).

[10] *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990). *Doss v. ITT Rayonier, Inc.*, 60 Wn. App. 125, 127-28 & n.2, 803 P.2d 4 (1991).

[11] *Doss*, 60 Wn. App. at 127 n.2.

[12] *See Kamla*, 147 Wn.2d at 124-25 (holding that *if* a jobsite owner does not retain control over the manner in which an independent contractor completes its work, the jobsite owner does not have a duty under WISHA). The converse would

ensure WISHA compliance and provide for the safety of the independent contractor's employees. Arguably, as Kinney asserted, the owner and those who maintained and oversaw the Space Needle structure and safety, especially for a job on the upper level, were in a better position to ensure compliance.

Again, Kinney alleges sufficient evidence to show that the SNC, as jobsite owner, may have acted in a manner similar enough to a general contractor to justify imposing the same nondelegable duty of care to ensure WISHA compliant work conditions. There is at least a question of material fact whether the SNC, because of its influence over the safety aspects of the pyrotechnic job, owed Kinney a duty to ensure her safety under WISHA.

■■ Kinney claims there is also a material question of fact whether the SNC owed her the common law duty of a landowner to an invitee. There is no dispute that "[e]mployees of independent contractors hired by landowners are invitees on the landowners' premises."[13] Further, our Supreme Court has adopted sections 343 and 343A of the *Restatement (Second) of Torts* to define a landowner's duty to invitees.[14] Section 343 states in pertinent part:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.[15]

---

implicitly also be true, where the jobsite owner does retain control it has a duty under WISHA to comply with the rules, regulations, and orders of that statute.

[13] *Kamla*, 147 Wn.2d at 125 (citing *Epperly*, 65 Wn.2d at 786; *Meyers v. Syndicate Heat & Power Co.*, 47 Wash. 48, 91 P. 549 (1907)).

[14] *Iwai*, 129 Wn.2d at 93.

[15] RESTATEMENT (SECOND) OF TORTS § 343 (1965).

Section 343A states in pertinent part:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.[16]

Therefore, "[a] landowner is liable for harm caused by an open and obvious danger if the landowner should have anticipated the harm, despite the open and obvious nature of the danger."[17]

Again, unlike in *Kamla*, in this case there is evidence provided by two former SNC supervisory employees, the facility manager and the building engineer, as well as an expert witness, indicating that considering the location of this particular workplace and design of the ladders and platforms at the top of the Space Needle, especially those ladders exposed to the elements, that a slip and fall from one of the upper ladders was foreseeable and that the SNC should reasonably have anticipated the possibility of harm because the rungs were round and painted with glossy paint and had no anti-slip surface.

As stated in Paul Thompson's declaration:

> Without supervision, help, and or proper ropes, it was dangerous for [Elizabeth] Kinney to go up or down that ladder at the top of the Space Needle.
>
> . . . I think it was foreseeable that an event like that [fall] would occur unless someone from the Space Needle was there to assist and help the Pyro Spectacular employees, including [Elizabeth] Kinney.

The declarations of Thompson and Lawson support an argument that the SNC should have anticipated the harm to Kinney despite the obvious hazard of the ladders, small platforms, and the hatch opening. Viewed in a light favorable to her, Kinney has presented sufficient evidence to get by summary judgment and a trier of fact should determine

---

[16] RESTATEMENT (SECOND) OF TORTS § 343A (1965).

[17] *Kamla*, 147 Wn.2d at 126; *see also Iwai*, 129 Wn.2d at 94.

whether the SNC owed her a common law duty as an invitee.

Finally, Kinney contends that on summary judgment the trial court improperly struck the majority of her declaration and portions of the declaration of her expert Mark Lawless. Considering our decision above, we do not need to address the issue. The decision of the trial court is reversed and the case is remanded for trial.

AGID and ELLINGTON, JJ., concur.