[No. 30728-6-II.   Division Two.   December 7, 2004.]

DAVID DEAN HOFF, ET AL., *Respondents*, v. MOUNTAIN CONSTRUCTION, INC., ET AL., *Appellants*.

*Kathleen M. Thompson* (of *Gardner Bond Trabolsi St. Louis & Clement*), for appellants.

*Richard L. Levandowski*, for respondents.

¶1 HUNT, J. — Mountain Construction, Inc., appeals the trial court's grant of partial summary judgment to David Hoff, a subcontractor's employee, who was injured when he fell into a deep pit at a construction site for which Mountain was general contractor. Mountain argues the trial court erred in (1) finding that Mountain breached its duty to provide fall restraint protection required by the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, as a matter of law on summary judgment; (2) excluding defense testimony in the subsequent trial on the remaining issues; (3) instructing the jury that Mountain violated WISHA; and (4) denying Moun-

tain's motion to reconsider the summary judgment ruling that Mountain had violated WISHA as a matter of law. Holding that the trial court did not err, we affirm.

## FACTS

### I. The Accident

¶2 Mountain Construction hired a subcontractor to excavate a 20-foot-deep pit at a renovation site. When the excavation encountered water, Mountain was unable to pump out the water in order to continue digging. Mountain hired Everson's Econo-Vac to vacuum the water out of the pit.

¶3 Econo-Vac employees David Hoff and Ed Bertash conferred with David Douglas, the site foreman. The pit was cordoned off with movable poles and yellow caution tape.[1] Parts of the barricade were moved out of the way to allow the Econo-Vac truck to access the pit. Hoff and Bertash began vacuuming water from the pit, using their truck and equipment parked at the lip of the pit, while the subcontractor's track hoe continued excavating within the pit. According to Bertash, they had no harness or fall restraint system.[2]

¶4 Hoff and Bertash removed two loads of water from the pit without difficulty. As they continued to vacuum, Hoff retrieved an extension for the vacuum from the back of their truck, put down the extension, turned to retrieve a clamp, lost his footing, fell into the pit, and landed on the track-hoe bucket, injuring his foot and hip. The track-hoe operator entered the pit and assisted Hoff up a ladder. Hoff's foot injury required surgery.

---

[1] In his pretrial deposition, Douglas identified poles and caution tape as the only barrier surrounding the pit. At trial, he mentioned a wooden guardrail at the edge of the pit.

[2] According to Hoff, Mountain refused his request for a safety line. Douglas said he may have asked Hoff if he should be tied off and Hoff declined.

## II. PROCEDURE

¶5 Hoff sued Mountain and the excavation subcontractor, alleging that Mountain breached its duty to make the site safe, to warn against potentially dangerous conditions, and to maintain the premises in a safe condition according to the law. Hoff moved for summary judgment, citing Mountain's violations of WISHA.[3] Mountain did not mention anything about a guardrail along the pit's edge.

### A. Partial Summary Judgment on WISHA Violation

¶6 The trial court granted partial summary judgment to Hoff, finding "no genuine issues as to any material fact regarding [Mountain's] breach of its duty to [Hoff] to provide a safe workplace (i.e. failure to have in place safety/fall restraint devices)." Clerk's Papers (CP) at 379-80. The trial court did find genuine issues of material fact as to causation and Hoff's potential comparative negligence.

¶7 Mountain moved for clarification, asking the court to specify which section of WISHA Mountain had violated. The trial court specified WAC 296-155-24510.[4]

¶8 Hoff moved for reconsideration, asking the trial court to find Mountain 100 percent liable. In response, Mountain filed a reply, which included a declaration from its general superintendent, John O'Connor. O'Connor's declaration mentioned, for the first time, a two-by-four wooden guard-

---

[3] WAC 296-155-040 and 296-155-655 (requiring the general contractor to use safety devices to protect employees from hazards associated with water accumulation); and WAC 296-155-505 and 296-155-24510 (requiring and describing fall arrest systems when there is a potential fall hazard from ten feet or more in height).

[4] "When employees are exposed to a hazard of falling from a location 10 feet or more in height, the employer shall ensure that fall restraint, fall arrest systems or positioning device systems are provided, installed, and implemented." WAC 296-155-24510.

rail in front of the access point to the pit.[5] The trial court denied reconsideration, leaving the proximate cause and comparative negligence issues for the jury.

## B. Trial of Remaining Issues

¶9 Douglas testified at trial that (1) Mountain had failed to prepare a fall protection plan;[6] (2) Mountain did not obtain a variance, required for inability to comply with general WISHA requirements;[7] (3) the guardrail served as a warning line, and it would not stop anyone who slipped and fell; and (4) there was nothing in place at the site to arrest or to prevent a fall into the pit. Douglas was unable to place the guardrail in the area where Hoff had been working in the pit.

¶10 Hoff moved to prevent Mountain from offering testimony suggesting that the wooden guardrail conformed to WISHA fall-arrest/restraint requirements. He argued such testimony would contradict the court's partial summary judgment order. The trial court suppressed this testimony, ruling that the time for Mountain to have argued that the guardrail complied with WAC 296-155-24510 was at the summary judgment motion.

¶11 In Mountain's offer of proof,[8] O'Connor admitted on cross-examination he could not testify under oath that the

---

[5] O'Connor said:

> We had also erected a 2 x 4 wooden guardrail approximately 16-18 feet long. The guardrail had a top rail, mid-rail, and toe kick in compliance with the required safety regulations. We placed this guardrail on the south side of the pit. We had designated an access point to the pit on the south side and placed a guardrail in front of this point, positioned between the side of the pit and the access path.

CP at 953.

[6] WAC 296-155-24505.

[7] WAC 296-155-010.

[8] The trial court allowed Mountain to present an offer of proof with O'Connor's testimony. O'Connor testified that the safety systems in place consisted of (1) a trench box to protect the sides of the excavation from cave-in; (2) warning ribbons around the excavation; (3) a guardrail at the point of access to the excavation; and (4) informing everyone who entered the building about the hazard, the safety

guardrail could have withstood a force of 200 pounds with minimal deflection, as required by WISHA,[9] or that the guardrail had ever been inspected. After its offer of proof, Mountain asked the court to allow O'Connor's testimony and to reconsider its ruling on the WISHA violation. The trial court ruled that O'Connor's testimony did not show compliance with WISHA requirements and O'Connor could not testify about the guardrail.

¶12 The trial court accepted Hoff's proposed jury instructions about Mountain's responsibility for complying with WISHA fall-arrest/restraint requirements. The jury found Mountain 99 percent liable and Hoff 1 percent contributorily negligent. Mountain appeals.

## ANALYSIS

### I. Partial Summary Judgment

#### A. Standard of Review

¶13 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson*, 98 Wn.2d at 437. The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or having its affidavits considered at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

procedures, and where they were allowed to access the pit. It was his understanding that these measures complied with all regulations.

[9] As required by WAC 296-155-24510(1)(a) (referencing chapter 296-155 WAC, Part K).

¶14 After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts sufficiently rebutting the moving party's contentions and disclosing the existence of a material issue of fact. *Seven Gables*, 106 Wn.2d at 13. The trial court should grant summary judgment only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437. Applying these standards here, we hold that the trial court properly granted partial summary judgment.

### B. Contractor's Duty to Comply With WISHA

■ ■ ¶15 General contractors have a specific, non-delegable duty to comply with WISHA regulations for the benefit of their employees and independent contractors' employees. *Kinney v. Space Needle Corp.*, 121 Wn. App. 242, 248, 85 P.3d 918 (2004). WISHA requires the employer to "develop and implement a written fall protection work plan including each area of the work place where the employees are assigned and *where fall hazards of 10 feet or more exist*." WAC 296-155-24505 (emphasis added). "When employees are *exposed to a hazard of falling from a location 10 feet or more in height*, the employer shall ensure that fall restraint, fall arrest systems or positioning device systems are provided, installed, and implemented." WAC 296-155--24510 (emphasis added).

¶16 It is undisputed that Mountain's excavation pit was more than 10 feet deep. Mountain argues, however, that these WAC fall restraint provisions apply only to potential falls from roofs or through floor or wall openings, not to potential falls into excavation pits. Mountain argues that WAC 296-155-655, which establishes general protection requirements for excavating, trenching, and shoring, applies. We disagree.

¶17 First, the title of the fall restraint chapter reads generally: "SAFETY STANDARDS FOR CONSTRUCTION WORK," PART C-1, "FALL RESTRAINT AND FALL AR-REST." WAC 296-155-24510.

¶18 Second, the plain language of WAC 296-155-24510 does not limit its application to roofing or other above-ground work. Instead, it uses broader terminology, namely an employee's exposure to a "hazard of falling from a *location* 10 feet or more in height," which clearly includes potential falls from the ground's surface into below-ground holes. WAC 296-155-24510 (emphasis added).

¶19 For example, rather than providing comprehensive standards confined to roofing, WAC 296-155-24510 cross-references other rules that expressly address required safety measures for roofs of specified pitches. *See, e.g.,* WAC 296-155-24515(3), referenced in WAC 296-155-24510(1)(c). Similarly, subsection WAC 296-155-24510(4)'s reference to "[d]roplines or lifelines used on *rock scaling operations*"[10] does not confine WAC 296-155-24510's application to rock scaling. Moreover, this subsection's focus on rock scaling defeats Mountain's argument that WAC 296-155-24510 applies only to falls from roofs, floors, and walls. Requiring specific types of fall restraint for particular types of construction work, such as roofing and rock scaling, does not nullify the rest of this code provision's application to fall hazards in general. Rather, by its plain language, WAC 296-155-24510 applies to construction work in general that presents fall hazards to workers.

¶20 We hold, therefore, as the trial court ruled, Mountain had a specific duty[11] under WAC 296-155-24505 and WAC 296-155-24510, respectively, to develop and to implement a fall protection plan and a fall-restraint/arrest or positioning system at the work site. We next address whether Mountain breached that duty as a matter of law.

## C. Breach of Duty: Noncompliance with WISHA

¶21 WAC 296-155-24510 provides several fall pro-

---

[10] (Emphasis added.)

[11] A WISHA violation may be excused if it is due to some cause beyond the violator's control that ordinary care could not have protected against, but the record does not show such excuse here. *See* 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL § 60.03, at 479 (4th ed. 2002).

tection options. "Fall restraint" includes guardrails capable of supporting 200 pounds with a minimum of deflection, safety belts/harnesses, or a warning line system with a tensile strength of 200 pounds and a safety monitor. WAC 296-155-24510(1). "Fall arrest" includes full-body harnesses, safety nets, and catch platforms. WAC 296-155--24510(2). Positioning device systems are rigged so that an employee cannot free fall more than two feet. WAC 296-155--24510(3). Mountain failed to establish compliance with any of these fall protection options either on summary judgment or at trial.[12]

¶22 In response to Hoff's motion for summary judgment, Mountain presented evidence of a warning line system consisting of yellow caution tape and poles positioned around the pit approximately 20 feet back from the edges. But this warning line lacked the required tensile strength of 200 pounds. Moreover, Mountain removed it to allow the Econo-Vac truck access to the pit.

¶23 Moreover, the record does not show a safety monitor system protecting workers between the warning line and the pit's edge. And the record is clear that Mountain did not provide fall arrest/restraint devices and that Hoff was not attached to a fall restraint harness or some equivalent device to prevent a fall into the pit.[13]

■ ¶24 Viewing the evidence presented at summary judgment in the light most favorable to Mountain, there was no genuine issue of material fact as to its failure to implement fall protection at the pit. Mountain claims it complied with its duty by erecting a warning line. But in order for a warning line to satisfy WAC 296-155-24510, it

[12] *See* next section of this analysis for a discussion of Mountain's offer of proof at trial.

[13] There was conflicting evidence as to why Hoff did not tie off. Hoff's deposition states that Mountain refused his request for a safety line. Douglas may have asked Hoff whether he should tie off, but Douglas was unsure that this exchange occurred. Nonetheless, Mountain had a nondelegable duty to insure WISHA compliance, and it should have prevented Hoff from working without the restraint if Hoff refused to use it. *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 464, 788 P.2d 545 (1990); *Kinney*, 121 Wn. App. at 248.

must have a tensile strength of 200 pounds and there must be a safety monitor for workers crossing the line. Neither was present here. Similarly, there were no fall arrest or restraint devices. Even if Hoff refused such a device, Mountain had a nondelegable duty to implement the device. *Kinney*, 121 Wn. App. at 248. Allowing Hoff to work without such a device was a breach of this duty.[14]

¶25 Partial summary judgment was proper. We now turn to the alleged errors at the subsequent jury trial on the remaining factual issues

## II. LIMITATION OF TRIAL TESTIMONY

¶26 Mountain argues that the trial court erred in limiting the trial testimonies of O'Connor and industrial safety expert Mark Lawless such that it could not attempt to show that the wooden barrier along one side of the pit complied with WAC 296-155-24510, in "circumvention of [the trial court's] prior ruling."[15] Report of Proceedings (RP) at 582. We review trial court limitations on testimony for abuse of discretion. *Tortes v. King County*, 119 Wn. App. 1, 12, 84 P.3d 252 (2003), *review denied*, 151 Wn.2d 1010 (2004)."Discretion

---

[14] And Mountain presented no evidence that it was unable to implement fall protection due to some cause beyond its control against which ordinary care could not have protected.

[15] The trial court commented:

I don't believe that [O'Connor's] testimony complies with the requirements set forth in the Washington Administrative Code dealing with the fall restraint/fall protection devices and systems. The testimony is still that there was no fall safety plan in place. Testimony also indicates that this railing, if it was in place, was not around the exposed areas of this open surface, which is required in WAC 296-155-505, designed to protect people from falling into these open surfaces.

The exceptions are when you remove these things that there be an actual person there monitoring the pit with appropriate warning devices and safety barriers.

The guardrail requirement is set forth not as one of the options in the fall protection plan. And they direct you in 296-155-245(10) to 296-155-245(15), which then takes you back to I think part (k) on floor openings, wall openings, and stairwells and, the requirements for guardrail. These guardrails were not in place in an appropriate location around the pit. And still is a violation of the Washington Administrative Code.

Report of Proceedings (RP) at 582-83.

is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). We find no abuse of discretion here.

¶27 The trial court allowed O'Connor to testify about whether he had discussed a safety harness with Hoff, whether Hoff had refused a harness, safety warnings, and where the Econo-Vac truck was located with respect to the pit's edge. But according to Mountain's offer of proof, even if the trial court had allowed O'Connor to testify about the guardrail, he would have testified only that there was a partial guardrail in place at the access point to the pit, along only one of the four sides of the excavation pit; he would not have testified that the guardrail could withstand 200 pounds of force, as WAC 296-155-24510(1)(a) required.[16] Moreover, the guardrail had not been inspected, as required by WAC 296-155-24510(1)(b)(v), which provides: "Components of fall restraint systems shall be inspected prior to each use for mildew, wear, damage, and other deterioration, and defective components shall be removed from service if their function or strength have been adversely affected."

¶28 Accordingly, we hold that the trial court's limitation of O'Connor's offered testimony was not error.

¶29 In spite of court-imposed limitations, Lawless testified at trial about (1) basic safety requirements at construction sites, which are "basically work specific and site specific," RP at 608; (2) the hazard at the Mountain construction site being "the potential for a worker to fall," RP at 609; (3) recognized, standard fall protection practices, including "lanyards and harnesses, ancillary devices, barricades, warning lines, covers, nets, or what are called catchplatforms," RP at 610; and (4) the warning line that Mountain installed at its construction site, consisting of

---

[16] WAC 296-155-24510(1)(a) references chapter 296-155 WAC, Part K which contains WAC 296-155-505(7)(b)(v) requiring that anchoring posts for the guardrail withstand a load of 200 pounds applied in any direction with a minimum of deflection.

four foot tall orange stanchions set on a base plate.

. . .

with a yellow ribbon or what might be termed caution tape established between those poles.

*And that was the fall protection mechanism that was employed by Mountain Construction around the perimeter of the excavation.*

RP at 610-11 (emphasis added).[17]

¶30 Mountain's theory of the case seems to be that it needed to implement only those safety requirements specified for shoring, trenching, or excavating, and, therefore, its warning line was sufficient. Mountain continues to argue on appeal that WISHA fall restraint requirements do not apply to its excavation pit. Having upheld the trial court's summary judgment ruling that WAC 296-155-24510 fall restraint requirements applied to Mountain's excavation and that Mountain failed to comply as a matter of law, we find no abuse of discretion in the trial court's decision to limit Mountain's witnesses' testimonies to avoid this issue.

¶31 Affirmed.

ARMSTRONG and VAN DEREN, JJ., concur.

---

[17] In contrast, Douglas's trial testimony is consistent with the other evidence and supports the trial court's summary judgment ruling. Douglas testified that (1) Mountain had not prepared a fall protection plan; (2) the guardrail served as a warning line, but it would not have stopped anyone who slipped and fell; (3) there was nothing in place to arrest or to prevent a fall; and (4) he could not say the partial guardrail had even been in the area where Hoff was working in the pit.